**In re The PRESIDENT OF the UNITED STATES In His Official Capacity, Alleged Debtor.**

**Bankruptcy No. 84–00631.**

United States Bankruptcy Court, District of Columbia.

March 11, 1985.

**2**

## ORDER

GEORGE F. BASON, Jr., Bankruptcy Judge.

The Clerk of this Court has requested guidance as to whether to accept for filing an involuntary petition under Chapter 7 of the Bankruptcy Code against "the President of the United States of America, in his Official Capacity as Commander-in-Chief, Armed Forces of the United States." The petitioner claims that he is owed military pay due him since 1943, totaling (with interest) over $39 million. The petition recites that by letter of July 13, 1984 the petitioner made demand upon the President for payment of the amount claimed due, which of course greatly exceeds the statutory minimum of "at least $5,000." [1] A copy of the demand letter is attached to the petition. That letter states that if the demand is not met, the petitioner "will ask the Referee in Bankruptcy [sic[2]] for proper advice to have an Involuntary Bankruptcy proceeding instituted against the USA."

Ordinarily, the Clerk of the Court must accept for filing any bankruptcy petition that is submitted, as long as it is signed, complies with other, strictly procedural requirements, and is accompanied by the required filing fee. It is not the function of the Clerk's Office to pass upon the substantive validity of papers submitted for filing. Nor, ordinarily, would the undersigned Bankruptcy Judge undertake to direct the Clerk not to accept, for substantive reasons, any petition. The appropriate procedure, almost without exception, is for the petition to be accepted for filing; thereafter, if substantively deficient, it can be dismissed either *sua sponte* or on motion of any party in interest. A judicial direction to the Clerk not to accept a petition for filing should be made only in the rarest of circumstances, where it is absolutely clear beyond any doubt on the face of the petition itself that the petition is fatally and irremediably defective and that under no conceivable circumstances can the relief

---

1. 11 U.S.C. § 303(b).

2. The title changed more than ten years ago from "Referee in Bankruptcy" to "U.S. Bankruptcy Judge."

requested by granted. In such a case it would seem to be more charitable to the petitioner to refuse his petition and refund the $60.00 filing fee, rather than go through the process of accepting the petition (and the fee) and then promptly dismissing the petition (but keeping the fee, as required by statute).[3]

■ This is one of those exceptional, rare cases. Moreover, in this case, the above-quoted text of the petitioner's demand letter indicates that by submitting the petition for filing the petitioner intends to "ask ... for proper advice" concerning the institution of an involuntary bankruptcy proceeding against the United States. This Bankruptcy Judge's advice to the petitioner is as follows:

For two closely related reasons it is absolutely clear beyond any doubt on the face of the petition itself that this petition is fatally and irremediably defective and that under no conceivable circumstances can the relief requested be granted.

3. Appellate review will remain available through mandamus.

4. 11 U.S.C. § 101(33) (definition of "person").

5. 11 U.S.C. § 101(32) (definition of "municipality"); 11 U.S.C. § 101(44) (definition of "State").

6. 11 U.S.C. § 109(a) ("... only a person ..., or a municipality, may be a [bankruptcy] debtor....").

7. Another indication of this fact that appears on the face of the petition itself is the petition's allegation that the alleged Debtor has resided in the District of Columbia "since 1776." The present incumbent is, it is true, the oldest person ever to occupy the office of President of the United States, but he is not quite *that* old. Obviously, the petition means that the seat of government of the United States has been in the District of Columbia since 1776 (actually, it has been here since 1800), not that the individual who occupies the office of President has been here that long.

8. Following and elaborating upon the language of Official Bankruptcy Form No. 11, the petition recites that "The Debtor is generally not paying his debts as such debts become due and has admitted same." No doubt this statement refers to the President's rather frequent speeches denouncing "big government spending" (except for military purposes) and calling for reductions in the federal deficit. However, the language of the Official Form and the statute, 11 U.S.C.

■ *First,* the Bankruptcy Code does not permit the United States Government to be a bankruptcy debtor. Only a "person" (including a natural individual, a partnership and a corporation,[4] but not a governmental unit) or a "municipality" (meaning a political subdivision or public agency or instrumentality of one of the fifty states[5]) may be a bankruptcy debtor.[6] It is true that the petition names as Debtor not "the United States" but "the President of the United States ... in his Official Capacity"; and the President is of course a natural individual. But the petition is against him "in his official capacity," not in his individual capacity.[7] The claimed debt is, if due, payable out of United States Government funds, not out of the President's personal assets.[8] Hence, the petition is in essence one against the United States Government,[9] which (as explained above) the Bankruptcy Code does not permit.

■ *Second,* and closely related, the doctrine of sovereign immunity stands as

§ 303(h)(1), refers not to the size of a debtor's indebtedness, however large that indebtedness may be, but rather to whether or not the debtor is making current payments on those debts. Even if a debtor can make current payments only by borrowing more and more, that debtor cannot be placed in involuntary bankruptcy until the debtor defaults on current payments because he can no longer find lenders willing to lend more. The United States Government under the current administration may indeed be on an unprecedented borrowing binge, but this Court takes judicial notice that, so far at least, there has been no default on the national debt, nor has the President "admitted" any such default. If the balanced-budget Constitutional amendment proposed by President Reagan were to be modified to permit a personal involuntary bankruptcy petition to be brought against any president (not in his official capacity but as an individual) who permitted the federal deficit to grow enormously during his term of office, then presidents would have a powerful personal incentive to save their personal assets from bankruptcy by avoiding growth of the federal deficit, and a petition such as that in this case could be entertained. However, no such modification has been either proposed or enacted. It would seem highly unlikely that President Reagan would ever proposed such a modification.

9. *See Ex parte Young,* 209 U.S. 123 28 S.Ct. 441, 52 L.Ed. 714 (1908); *see also Brandon v. Holt,* 469 U.S. 464, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985).

**4**

an impenetrable barrier to this petition. That doctrine prohibits any lawsuit against the United States Government unless the Government consents to be sued. It is true that § 106 of the Bankruptcy Code "provides for a limited waiver of sovereign immunity in bankruptcy cases." [10] That limited waiver permits a debtor or trustee to assert certain kinds of counterclaims against the Government, permits mutual claims to be offset, and permits adjudications of bankruptcy-related matters that are binding against the Government. By no stretch of the imagination can that "limited waiver" be construed to encompass a consent to be sued on an involuntary bankruptcy petition.

■ It is also true that § 1325(c) of the Bankruptcy Code permits a bankruptcy court to "order any entity [including the Government] from whom the [bankruptcy] debtor receives income to pay all or any part of such income to the [Chapter 13] trustee." This is another limited waiver of sovereign immunity, insofar as it applies to the United States Government and its officers and agencies, and this too could by no stretch of the imagination be construed to encompass a consent to be sued on an involuntary bankruptcy petition.

■ Finally, 5 U.S.C. § 702 also contains a limited waiver of sovereign immunity. But it too does not encompass a consent to be sued on an involuntary bankruptcy petition. The second sentence of section 702 provides:

An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the Unit-

ed States or that the United States is an indispensable party.

Thus, this statute provides that sovereign immunity will be waived only if the relief sought is "other than money damages." It is true that this case is not an ordinary civil action seeking money damages. Nevertheless, it is obvious upon reflection that the relief which the petitioner seeks in his petition is not really "other than money damages." What he wants, ultimately, is to be paid the debt that he claims is due to him. That is money damages. Moreover, the intermediate steps toward that ultimate goal would involve unprecedented interference in the Government's financial, monetary and other affairs. A Chapter 7 trustee would be appointed. The trustee's duty would be to liquidate into cash all the assets of the United States as quickly and inexpensively as possible and then to distribute that cash *pro rata* to the petitioner (if his claim is determined to be valid) and to all other entities having valid claims against the Government. The Government would have to cease functioning.[11] This Court concludes that, since the petitioner's claim is one for money damages, the waiver of sovereign immunity contained in the second sentence of 5 U.S.C. § 702 does not apply.

Moreover, the last sentence of 5 U.S.C. § 702 removes any possible doubt. That sentence provides that nothing in § 702 "confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." In this case, as shown above, the Bankruptcy Code "forbids the relief which is sought" both by excluding the United States Government from the category of entities that may be a bankruptcy debtor, and by granting only a limited waiver of sovereign immunity which cannot possibly be construed to encompass

---

**10.** S.Rep. No. 95–989, p. 29 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5815.

**11.** The Bankruptcy Code allows a Chapter 7 trustee only very limited authority, and only with court approval, "to operate the business of the debtor for a limited period, if such operation is in the best interest of the estate and

consistent with the orderly liquidation of the estate." 11 U.S.C. § 721.

Despite his repeated denunciations of "big government," not even the present incumbent has gone so far as to call for abolishing the United States Government altogether.

a consent to be sued on an involuntary bankruptcy petition.

 Even were the petition not subject to the above-described irremediable impediments, it would no doubt soon be dismissed for failure to comply with the requirements (1) that an involuntary petition against a Debtor with twelve or more debts can only be brought by "three or more" creditors,[12] rather than by only one creditor, and (2) that each petitioning creditor must have a claim against the debtor that is not "the subject of a bona fide dispute."[13]

 Military personnel who have pay claims against the Government have both administrative and judicial remedies.[14] Those remedies do not include an involuntary bankruptcy petition against the President of the United States in his official capacity.

NOW THEREFORE IT IS ORDERED that the Clerk of this Court shall return to the petitioner the involuntary petition which he has lodged with this Court, together with the $60 filing fee.

---

12. 11 U.S.C. § 303(b).

13. *Id.*

14. *See United States v. Larinoff,* 431 U.S. 864, 53 L.Ed.2d 48, 97 S.Ct. 2150 (1977).