Michael McCANDLESS, Benjamin Reynolds, Bradley Pearson, Brian Patterson, Jerry Snyder, John E. Bulkley, Plaintiffs,

v.

TRANS PENN WAX CORPORATION, Astor Wax Corporation, Associated British, Defendants.

Civ. A. No. 93–126E.

United States District Court,
W.D. Pennsylvania.

Dec. 13, 1993.

---

Joseph E. Altomare, Altomare & Barnhart, Titusville, PA, for plaintiffs.

John M. Quinn, Quinn Law Firm, Kenneth W. Wargo, Quinn, Buseck, Leemhuis, Toohey & Kroto, Inc., Erie, PA, David C. Hagaman, Robert E. Rigrish, Clark, Paul, Hoover & Mallard, Atlanta, GA, for defendants.

## MEMORANDUM OPINION

COHILL, District Judge.

Presently before the Court is Defendants' motion for reconsideration of our Order of October 7, 1993 granting Plaintiffs' Motion for Remand. For the reasons stated herein, we will deny the motion for reconsideration.

### I. Background

The essential facts of this case are not in dispute. This dispute arises out of an employee effort to decertify Local 8240 of the Oil, Chemical and Atomic Workers' International Union as the collective bargaining representatives for manufacturing employees at the defendant Trans Penn Wax Corporation's (Trans Penn) plant. Plaintiffs are six former employees of defendant Trans Penn Wax Corporation, who seek damages for alleged fraud and breach of contract against their former employer and two other companies. Defendant Astor Wax Corporation, like Trans Penn, is a wholly owned subsidiary of defendant ABI Corporation, which is engaged in the business of research, development and production of petrochemical products through its subsidiaries.

This case had been removed from the Court of Common Pleas of Crawford County, Pennsylvania, located in the Western District of Pennsylvania, upon motion by the defendants. The original complaint included allegations of RICO violations, pursuant to 18 U.S.C. § 1964(c), which the plaintiffs later voluntarily withdrew, leaving only the state causes of action for fraud and breach of contract.

Plaintiffs had been bargaining unit members, covered by a collective bargaining agreement, when Trans Penn's agents allegedly made representations which led the plaintiffs to vote against the union. Plaintiffs allege that on the eve of the decertification election, the employees were presented with a written "contract" for employment and guaranty of job security. This document reads:

> "you will have a job here ... as long as you perform your work satisfactorily, follow our customary rules, and we are economically able to operate this institution successfully and work is available.... This guarantee is given to you because of the false union rumor that you will lose your job if the Union loses the election."

Amended Complaint Exhibit "A."

Plaintiffs argue that they relied on this representation in their decision to vote in favor of decertification, and that the defendants breached their contract when the plaintiffs were terminated by defendants on October 30, 1991, over a year and a half after the election. Amended Complaint ¶ 21. Defendant Trans Penn later contracted with Manpower, Inc. to provide temporary production workers in September, 1992. Def.'s Resp. to Interrog. 14.

Defendants' motion for reconsideration characterizes the plaintiffs' allegations as falling within federal jurisdiction because they are preempted by federal labor law. Defendants' answer to the original and amended complaints includes preemption as an affirmative defense to the allegations. Defendants argue that the plaintiffs have attempted to manipulate the forum and that we should therefore reconsider our earlier ruling in which we remanded this case to state court.

### II. Discussion

 We must look to the complaint at the time the petition for removal is filed to determine whether there is federal jurisdiction. *Pullman Co. v. Jenkins*, 305 U.S. 534, 537–38, 59 S.Ct. 347, 348–49, 83 L.Ed. 334

(1939). Our decision to retain or relinquish federal jurisdiction rests on the principles of judicial economy, convenience, fairness and comity, including consideration of "forum shopping." *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988).

In the present motion the defendants argue that state court jurisdiction is preempted by § 301 of the federal Labor Management Relations Act (LMRA) and §§ 7 and 8 of the National Labor Relations Act (NLRA), 29 U.S.C. § 158(a)(1). Section 8(a)(1) of the NLRA makes it an unfair labor practice for an employer to "interfere with, restrain, or coerce employees" in their rights which are established in § 7 of the NLRA. Section 7 provides that "[e]mployees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing ..." 29 U.S.C. § 157.

■ The purpose of Section 8(a)(1) is to establish "the right of employees to organize without employer interference." *Republic Aviation Corp. v. NLRB,* 324 U.S. 793, 798, 65 S.Ct. 982, 985, 89 L.Ed. 1372 (1945). It prohibits promises and conduct which have the "express purpose of impinging on [the employees'] freedom of choice for or against unionization and is reasonably calculated to have that effect." *NLRB v. Exchange Parts Co.,* 375 U.S. 405, 409, 84 S.Ct. 457, 460, 11 L.Ed.2d 435 (1964). Promises of benefit, in addition to threats or coercion, to discourage union votes violate § 8(a)(1). *Hedstrom Co. v. NLRB,* 558 F.2d 1137, 1143 n. 16 (3d Cir.1977).

Defendants argue that plaintiffs' allegations assert violations of rights afforded protection by the federal law because the promise of job security was arguably made on the eve of the decertification election with an alleged attempt to influence votes. Def.'s Brief at 6–7. Plaintiffs argue that the *offering* of individual employment contracts could perhaps present an issue within the jurisdiction of the NLRB, but the plaintiffs in this case argue that they merely seek to *enforce* the rights and remedies arising from an enforceable contract, an employment contract which they argue is separate and distinct

from any federal labor policy. Pls.' Brief at 3.

■ State causes of action are presumptively preempted if they concern conduct that is actually either prohibited or protected by federal labor law. *San Diego Bldg. Trades Council v. Garmon,* 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959). The United States Supreme Court, however, has carved out exceptions to the preemption doctrine and allowed state actions to remain viable in cases which allege false and malicious statements, *Linn v. United Plant Guard Workers,* 383 U.S. 53, 86 S.Ct. 657, 15 L.Ed.2d 582 (1966), intentional infliction of emotional distress, *Farmer v. Carpenters,* 430 U.S. 290, 97 S.Ct. 1056, 51 L.Ed.2d 338 (1977), and trespass, *Sears, Roebuck & Co. v. Carpenters,* 436 U.S. 180, 98 S.Ct. 1745, 56 L.Ed.2d 209 (1978), even though the employers' practices themselves could be adjudicated as unfair labor practice by the National Labor Relations Board.

> The critical inquiry in applying the *Garmon* [359 U.S. 236, 79 S.Ct. 773 (1959)] rules, where the conduct at issue in the state litigation is said to be arguably prohibited by the Act and hence within the exclusive jurisdiction of the NLRB, is *whether the controversy presented to the state court is identical with that which could be presented to the board.*

*Belknap, Inc. v. Hale,* 463 U.S. 491, 510, 103 S.Ct. 3172, 3183, 77 L.Ed.2d 798 (1983) (emphasis added).

The United States Supreme Court has held that the NLRA does not preempt state court jurisdiction of a state law breach of contract claim against an employer where the controversy presented to the state court is not identical to that which could be presented to the NLRB. *Id.*

■ Here, the thrust of plaintiffs' allegations in the amended complaint is that the contracts entered into by the former employees and the defendants were breached by the defendants and were fraudulently induced. This is not the same controversy which would be presented to the NLRB. We do not believe that the contracts were even arguably unfair labor practices, as the conduct typical-

ly prohibited by the federal labor law involves promises of, or actual granting of, fringe benefits such as enhanced pensions, *NLRB v. Baltimore News American Div.,* 590 F.2d 554 (4th Cir.1979), additional paid holidays, *NLRB v. Eagle Material Handling, Inc.,* 558 F.2d 160 (3d Cir.1977), and lenient sick leave. *NLRB v. Jet Spray Corp.,* 560 F.Supp. 1147 (D.Mass.1983). They do not include cases such as the instant one, where the employer promises that in a favorable economic climate and with employee compliance, the employee will have a secure job. There is no benefit in this promise other than what existed before the "contract" was formed and we would characterize this alleged contract as mere campaign "puffery."

Taking into consideration the values of judicial economy, convenience, fairness and comity, we do not believe that the present case should remain within our jurisdiction. The plaintiffs' allegations involve allegations of damages resulting from what they perceived as a valid, enforceable employment contract which was allegedly fraudulent. This is not an action to challenge the conduct of the employer to coerce anti-union votes. It is an action for damages for breach of contract, and therefore, is better suited to be adjudicated by the Pennsylvania courts.

### *ORDER*

AND NOW, to-wit, this 13th day of December, 1993, it is hereby ORDERED, ADJUDGED and DECREED that defendants' motion to reconsider remand order (Doc. No. 14) be and hereby is DENIED. This case remains closed.